## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

U. S SECURITIES AND EXCHANGE
COMMISSION,

Plaintiff,

v.

HUGUES PIERRE JOUBLIN,

Defendant,

Civil Action No.: 22-CV-4397

## COMPLAINT

Plaintiff Securities and Exchange Commission (the "Commission") files this Complaint against Defendant Hugues Pierre Joublin ("Joublin") and alleges as follows:

### SUMMARY

1.      This action alleges insider trading by Joublin based on confidential information Joublin obtained while employed at AstraZeneca PLC ("AZN").

2.      On or about March 6, 2019, Joublin, then Global Head of Corporate Affairs for Oncology at AZN, learned that AZN was involved in confidential negotiations with Daiichi Sankyo Co. Ltd. ("Daiichi") to enter into a global development and commercialization agreement for Daiichi's targeted antibody cancer treating drug.

3.      Shortly thereafter, on March 12, 2019, while in possession and on the basis of this material nonpublic information, and in breach of his duties to AZN and its shareholders, Joublin purchased 500 American Depository Shares of Daiichi.

4.    On March 28, 2019, after the market closed, AZN and Daiichi announced they had entered into a global development and commercialization agreement for Daiichi's targeted antibody cancer treating drug.

5.    On March 29, 2019, following the public announcement, the price of Daiichi American Depository Shares rose by 24%, and Joublin obtained illicit profits of approximately $4,995.

6.    By engaging in the conduct described in this Complaint, Joublin, violated and unless enjoined, will continue to violate Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## JURISDICTION AND VENUE

7.    The Commission brings this action pursuant to Sections 21(d), 21(e), and 21A of the Exchange Act [15 U.S.C. §§ 78u(d)-(e), 78u-1] seeking a final judgment that permanently enjoins Joublin from engaging in the transactions, acts, practices, and courses of business, alleged in this Complaint and orders disgorgement, prejudgment interest, civil money penalties, and such other and further relief the Court may deem just and appropriate.

8.    The Court has jurisdiction pursuant to Sections 21(d), 21(e) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78aa].

9.    Joublin, directly or indirectly, has made use of the means and instrumentalities of interstate commerce or of the mails in connection with the transactions, acts, practices, and courses of business alleged herein.

10.    Venue is proper pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa], because certain of the acts, practices, and course of business constituting the alleged violations

occurred within the Southern District of New York.  The Defendant placed an unlawful trade that was executed in the OTC Pink market, which is located in this judicial district.

## DEFENDANT

11.     Hugues Pierre Joublin, age 54, is currently a resident of France.  Joublin was employed as the Global Head of Corporate Affairs for Oncology at AZN in Gaithersburg, Maryland from June 2015 until his termination on December 15, 2019.  During that time, Joublin resided in Bethesda, Maryland.

## RELEVANT ENTITIES

12.     AstraZeneca PLC is a global pharmaceutical company incorporated in the U.K. and headquartered in London.  At all relevant times, its common stock was registered with the Commission pursuant to Section 12(b) of the Exchange Act and publicly traded on the NASDAQ under the symbol AZN.

13.     Daiichi Sankyo Co. Ltd is a global pharmaceutical company headquartered in Tokyo, Japan.  Daiichi's ordinary shares are registered in Japan and traded on the Tokyo Stock Exchange.  Daiichi American Depository Shares ("Daiichi Shares") are quoted and traded in the United States in the OTC Pink market under the symbol DSNKY.

## FACTS

14.     While employed as AZN's Global Head of Corporate Affairs for Oncology, Joublin's core job responsibilities involved the preparation of draft materials and draft communications related to AZN's oncology products, which AZN management and others reviewed, modified and approved before they were released internally or outside of the company.

3

15.     During Joublin's employment, all AZN employees were required to complete an annual Code of Ethics training.  Joublin completed this training from at least 2017 through 2019.

16.     AZN's Code of Ethics and the Ethical Interactions Policy expressly prohibited insider trading and stated that AZN resources or an employee's position should not be used to personally benefit the employee or others, respectively.

17.     During his employment, Joublin was also subject to AZN's Memorandum on Inside Information (the "Memo"), which was distributed to employees when they were in possession of, or may in the future, have possession of, inside information about AZN.

18.     The Memo defined inside information as, "information of a precise nature, which has not been made public, which relates, directly or indirectly, to the Company (including subsidiaries) or its securities or related financial instruments and which, if made public, would be likely to have a significant effect on the price or value of those securities or related financial instruments."

19.     The Memo stated that all employees with access to inside information were placed on a "restricted list" which would automatically prohibit employees from dealing in AZN securities.

20.     The Memo also placed employees under a duty of confidentially with respect to "any confidential information received (whether about the Company or a third party)" and employees were prohibited from using or disclosing the confidential information without due authorization.

21.     Joublin was familiar with the Memo, and had previously received a copy of the Memo at least as early as October 2018 in connection with another AZN venture.

22.     At all relevant times, Joublin understood his obligations under the Memo.

23.     The Memo also indicated that Joublin was subject to the AZN Group Securities Dealing Code (the "Code") with respect to trading in AZN securities.

24.     The Code expressly prohibited employees from misusing AZN information that was not available to the public and required employees to keep AZN information confidential. The Code also prohibited employees from trading in the securities of other companies where employees received confidential inside information regarding that company.

25.     At all relevant times, Joublin understood his obligations under the Code.

A.     **Joublin Learns that AZN and Daiichi are in Confidential Negotiations**

26.     In January 2019, AZN and Daiichi discussed a potential global development and commercialization agreement for Daiichi's targeted antibody cancer treating drug (the "Agreement").

27.     On February 10, 2019, Daiichi received a non-binding proposal from AZN and the companies engaged in several weeks of negotiations and due diligence.

28.     On March 5, 2019 at 10:27AM, Joublin received an email indicating he had been identified as an employee who would receive confidential information regarding the Agreement. The email included an attachment, "Confidentiality Rules and Guidelines."

29.     On March 5, 2019 at 10:47AM, Joublin responded that he had received and understood the confidentiality rules and guidelines regarding the Agreement.

**30.**     As early as the morning of March 6, 2019, Joublin was briefed on the Agreement and provided access to the confidential SharePoint site and tasked with communication deliverables for the Agreement.  Joublin was responsible for drafting public communications, including the preparation of a Q&A document, creating a communications plan, preparing the press release and drafting internal documents.

**B.      Joublin Purchases Daiichi Shares**

31.      Approximately three days later, while in possession of material nonpublic information, on Saturday, March 9, 2019 at 11:22AM, Joublin emailed his broker to inquire about the mechanics of funding his U.S. brokerage account to purchase stock.

32.      On Monday, March 11, 2019, Joublin directed his broker to transfer $20,000 from his checking account to his brokerage account.

33.      That evening, at 10:02PM, less than one week after Joublin was provided with material nonpublic information regarding the Agreement, he entered an order via the internet to purchase 500 Daiichi Shares at the market price in his brokerage account.

34.      On Tuesday, March 12, 2019 at 9:30AM, Joublin's order was executed at $40/share for a total cost of approximately $20,000.  This was Joublin's first and only purchase of Daiichi Shares.

35.      Shortly after purchasing Daiichi Shares, at 12:40PM on March 12, 2019, Joublin received an email from AZN indicating that he was designated a "Restricted Person" in relation to the Agreement.  The email highlighted Joublin's obligations, among other things, his awareness of the legal and regulatory responsibilities entailed in having access to inside information and the sanctions applicable to insider dealing.  Joublin was required to review and acknowledge the contents of the email and the two attachments: the Memo and the Code.

36.      On March 12, 2019, Joublin acknowledged receipt and understanding of: being placed on the Restricted Person list and the contents of the Memo and the Code.

37.      At no time did Joublin contact anyone at AZN to advise them of his purchase of Daiichi Shares.

38.     Joublin was a company insider who was familiar with the Memo and the Code and had a duty to maintain AZN's information confidential and not use it for his benefit as soon as he had received it.  This also applied to insider information in relation to Daiichi, as confirmed in the March 12 email.  Joublin violated this duty when he used the material nonpublic information he learned to purchase Daiichi Shares.

## C.     AZN and Daiichi Announce the Agreement

39.     On March 28, 2019, Daiichi Share price closed at $40.18.

40.     After the market closed, on March 28, 2019 at 7:30PM, AZN and Daiichi announced they had entered into a global development and commercialization agreement for Daiichi's antibody cancer treating drug.

41.     On March 29, 2019, the first trading day after the announcement, Daiichi Shares closed at $49.97 per share, an increase of approximately 24% overs its pre-announcement closing price of $40.18 per share.

42.     Using material, non-public information he had misappropriated from AZN, Joublin obtained total ill-gotten gains of $4,995 from his purchase of Daiichi Shares.

## D.     Joublin Violated the Federal Securities Laws

43.     At all relevant times, Joublin owed a duty to not use AZN's confidential information for his own benefit, including trading on the basis of such information.

44.     The information about the Agreement was confidential.  AZN established policies and procedures designed to protect such information and to prohibit its employees from trading on such information.

45.     The information about the Agreement was material.  A reasonable investor would have viewed the information relating to the Agreement as being important to his or her

investment decision and/or significantly altering the total mix of information available to the public.

46.     Joublin knew, or was reckless in not knowing, that the information he acquired about the Agreement was material, nonpublic information.

47.     Joublin knew, or was reckless in not knowing, and that he owed a duty not to trade on the basis of the material nonpublic information about the Agreement that he learned during the course of his employment.

48.     In breach of his duty, Joublin traded on the basis of the material, non-public information about the Agreement that he learned during the course of his employment.

49.     Joublin, directly or indirectly, made use of the means and instrumentalities of interstate commerce or the mails in connection with the acts, transactions, practices, and course of business alleged in this Complaint.

## CLAIM FOR RELIEF

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder

50.     The Commission re-alleges and incorporates by reference here the allegations in paragraphs 1 through 49, as if they were fully set forth herein.

51.     By engaging in the conduct described above, Joublin, directly or indirectly, in connection with the purchase or sale of securities, and by the use of means or instrumentalities of interstate commerce, or the mails, or the facilities of a national securities exchange, has, knowingly or recklessly:

    a.   employed a device, scheme, or artifice to defraud;

    b.   made an untrue statement of a material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, and/or

    c.   engaged in an act, practice, or courses of business which operated or would operate as a fraud or deceit upon other persons.

52.    By reason of the foregoing, Joublin has violated and, unless enjoined, will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter a Final Judgment:

### I.

Permanently restraining and enjoining Joublin from, directly or indirectly, engaging in conduct in violation of Section 10(b) of the Exchange Act [15 U.S.C. §§ 78j(b)], and Rule 10b-5 thereunder [17 C.F.R. §§ 240.10b-5];

### II.

Ordering Joublin to disgorge, with prejudgment interest, all illicit trading profits or other ill-gotten gains received as a result of the conduct alleged in this Complaint;

### III.

Ordering Joublin to pay a civil monetary penalty pursuant to Section 21A of the Exchange Act [15 U.S.C. § 78u-1]; and

# IV.

Granting any other and further relief this Court may deem just, equitable, or necessary in connection with the enforcement of the federal securities laws.

Dated: May 27, 2022

Respectfully submitted,

Christopher R. Kelly
Gregory R. Bockin
Kingdon Kase
Paulina L. Jerez
Attorneys for Plaintiff
U.S. SECURITIES AND EXCHANGE
COMMISSION
Philadelphia Regional Office
1617 JFK Boulevard, Suite 520
Philadelphia, PA 19103
Phone: 215-597-3100
Fax: 215-597-2740
Email: KellyCR@sec.gov